Henry J. MILLER, Jr. and Barbara Miller, individually and as husband and wife, Respondents,

v.

ASTLEFORD EQUIPMENT CO., INC., Respondent,

Prudential Property and Casualty Insurance Company, a corporation, proposed intervenor, Appellant.

No. C2–82–1171.

Supreme Court of Minnesota.

April 22, 1983.

od to a 60-day period.

Dean K. Johnson and Robert G. Haugen, Bloomington, for appellant.

Hauer & Lewis, Robert J. Hauer, Jr., and Michael Fargione, Minneapolis, for Millers.

Graham Heikes, St. Paul, for Astleford Equipment Co., Inc.

COYNE, Justice.

Prudential Property and Casualty Insurance Company appeals from an order denying its motion to intervene of right pursuant to Minn.R.Civ.P. 24.01 in this suit by plaintiffs Henry J. Miller, Jr. and Barbara Miller to recover damages for personal injuries from defendant Astleford Equipment Co. Inc. (Astleford). The sole issue on appeal is whether the trial court erred by concluding that Prudential failed to satisfy the criteria of Minn.R.Civ.P. 24.01. We answer this question in the affirmative and, accordingly, reverse.

On January 16, 1981, Henry Miller went to Astleford, an automotive service facility, to pick up his motorhome, which he had left there for repairs. The vehicle's engine would not start so an employee of Astleford hotwired it from underneath. The motorhome lurched forward striking Henry Miller and allegedly causing serious and permanent injuries. Prudential has paid and continues to pay no-fault personal injury protection benefits to Miller as a result of this incident. When Miller commenced this tort suit for damages against Astleford, Prudential sought to intervene on the ground that it is entitled to recoup benefits paid.

Minn.R.Civ.P. 24.01 sets out a two-part test for evaluating timely applications for intervention of right. The first requirement is that the applicant "[claim] an interest relating to the property or transaction which is the subject of the action." Prudential asserts two such interests. The first is a claim that pursuant to Minn.Stat. § 65B.53, subd. 3 (1982)[1] it is subrogated to Miller's rights against Astleford. In *Engelrup v. Potter*, 302 Minn. 157, 224 N.W.2d 484 (1974) we held that a right of subrogation was a sufficient interest for purposes of Minn.R.Civ.P. 24.01. While we are mindful that the insurer in *Engelrup* had an established subrogation interest while Prudential has only asserted such an interest, and that Prudential's actually establishing the asserted interest involves resolution in its favor of complex issues of statutory construction as well as factual matters, Minn.R.Civ.P. 24.01 requires merely a claimed interest, not a certain one. We do not mean to suggest that any claim, however frivolous, will suffice, but we are persuaded that Prudential's claim is sufficient to support intervention. Having determined that Prudential's subrogation claim is a proper interest we need not consider the second alleged interest unless we conclude that the subrogation claim does not satisfy the second requirement of Minn.R. Civ.P. 24.01.

---

1. A reparation obligor paying or obligated to pay basic economic loss benefits is subrogated to a claim based on an intentional tort, strict or statutory liability, or negligence other than negligence in the maintenance, use, or operation of a motor vehicle. This right of subrogation exists only to the extent that basic economic loss benefits are paid or payable and only to the extent that recovery on the claim absent subrogation would produce a duplication of benefits or reimbursement of the same loss.

The second requirement for intervention of right is that the applicant must be "so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties." Minn.Stat. § 65B.53, subd. 3 (1982) limits an insurer's right of subrogation to amounts necessary to prevent a double recovery by the injured person. Minn.Stat. § 65B.51, subd. 1 (1982) requires that when injury is motor vehicle related in no-fault terms, no-fault benefits paid must be deducted from any tort recovery. Application of the offset provisions of § 65B.51 is, of course, in Astleford's interest. Deduction of the value of basic economic loss benefits from any recovery to which the Millers are entitled may, however, destroy Prudential's asserted subrogation right. The Millers, on the other hand, have no incentive to resist application of the offset provisions, for recovery of the value of basic economic loss benefits would simply expose them to Prudential's claim for reimbursement. Consequently, it appears that Prudential's interest will be adequately protected only by intervention.

Reversed.