Brian MILBRANDT, et al., Plaintiffs,

**Mutual Service Insurance Company petitioner, Appellant,**

v.

**AMERICAN LEGION POST OF MORA, Respondent,**

**City of Mora, Respondent,**

**City of Ogilvie, Respondent.**

Nos. CO–84–265, C8–84–482.

Supreme Court of Minnesota.

Aug. 16, 1985.

Quinlivan, Sherwood, Spellacy & Taruestad, P.A., Michael J. Ford, Kevin A. Spellacy, St. Cloud, for appellant.

Foster, Waldeck & Lind, Ltd., Peter E. Lind, Jeffrey M. Bauer, Minneapolis, for American Legion Post of Mora.

Faegre & Benson, John P. Borger, Scott P. Drawe, Minneapolis, for City of Ogilvie.

Maun, Green, Hayes, Simon, Johanneson & Brehl, Richard T. McHaffie, St. Paul, for City of Mora.

AMDAHL, Chief Justice.

Mutual Service Insurance Company commenced this dram shop action against respondents, claiming that it was subrogated to the rights of its insured, Diane Milbrandt, by virtue of its payment to the insured of basic economic loss benefits occasioned by the death of her husband, Craig Milbrandt, in an automobile accident. The respondents moved the trial court for summary judgment on Mutual Service's subrogation claim. The trial court granted summary judgment for all three respondents. The court of appeals affirmed. *Mutual Service Insurance Company v. American Legion Post of Mora,* 354 N.W.2d 499 (Minn.App.1984). We granted review and also affirm.

This litigation arose from a one-car accident which occurred at approximately 12:30 a.m. on July 15, 1978. The car, driven by Brian Milbrandt, was traveling west on County Road 6 in Kanabec County near Mora, Minnesota, when it struck the right abutment of a narrow bridge which spanned the Snake River. Craig Milbrandt, Brian's brother, who was riding on the passenger side of the front seat, was severely injured in the accident and died 2 weeks later. The accident occurred when the Milbrandts and another passenger were returning home from an evening of drinking. During the course of the evening, the three men had consumed intoxicating beverages at the Ogilvie Municipal Liquor Store, the Mora Municipal Liquor Store, and the American Legion Post of Mora.

Mutual Service Insurance Company insured, on separate policies, two automobiles owned by Craig Milbrandt. Mutual Service paid Diane Milbrandt, Craig's wife, $40,000 in medical expense benefits and $10,000 in wage loss benefits, the maximum benefits available from the stacking of the two policies. By virtue of these payments, Mutual Service claimed that it was subrogated to the rights of Diane Milbrandt, and in July of 1979 commenced an action against respondents City of Ogilvie, City of Mora, and American Legion Post of Mora, claiming that each served liquor to Brian Milbrandt when he was obviously intoxicated, in violation of the Dram Shop Act, Minn.Stat. §§ 340.73, subd. 1, 340.95 (1984). All three respondents denied the allegation that they sold liquor to Brian Milbrandt illegally, and later moved for summary judgment on Mutual Service's subrogation claim. The trial court granted

summary judgment in favor of respondents.

In July of 1979, Diane Milbrandt commenced a separate action against respondents on behalf of herself and her two minor children, alleging that respondents illegally sold intoxicating beverages to Brian Milbrandt and thereby caused the death of Craig Milbrandt. In separate answers, the City of Ogilvie and the American Legion Post of Mora claimed that the suit should be dismissed because Diane Milbrandt had settled with the City of Ogilvie for $30,000 and with the American Legion Post of Mora for $45,000 and had signed a *Pierringer* release discharging Ogilvie and the Legion Post from further liability arising out of the July 15, 1978, accident and agreeing to indemnify and hold Ogilvie and the Legion Post "harmless from liability to the other named parties to this action or others for contribution, indemnity, or subrogation."

In December of 1979, Mutual Service moved to intervene in Diane Milbrandt's action against respondents. Mutual Service accompanied its motion with an affidavit stating that it had notified Ogilvie's insurer and the Legion Post's insurer of Mutual Service's subrogation interest. Mutual Service contended that because it had notified the insurers of its subrogation claim, and the insurers settled with Diane Milbrandt despite the notification, the release had no effect upon Mutual Service's subrogation claim. The trial court granted summary judgment in favor of Ogilvie and the Legion Post, dismissing Diane Milbrandt's action against them, and denied Mutual Service's motion to intervene.

In April of 1981, Mutual Service again moved to intervene in Diane Milbrandt's action, noting that Diane Milbrandt had offered to settle with the City of Mora, the remaining defendant, for $17,500. Claiming that Diane Milbrandt's recovery from her settlement agreements exceeded her damages, Mutual Service asked to share in

the proceeds of the settlement with the City of Mora. Diane Milbrandt opposed Mutual Service's motion to intervene, claiming first that since she had settled with all three respondents, there was no action remaining in which to intervene. Milbrandt also submitted an affidavit by an economist who calculated her actual damages to be $357,544. Because Diane Milbrandt had settled with all respondents, the trial court dismissed the case in July of 1981.

Mutual Service appealed from the adverse summary judgment in its separate action against respondents, but took no appeal from the denial of its request for intervention in Diane Milbrandt's action.[1]

1. Minn.Stat. § 65B.53, subd. 3 (1984), provides:

A reparation obligor paying or obligated to pay basic economic loss benefits is subrogated to a claim based on an intentional tort, strict or statutory liability, or negligence other than negligence in the maintenance, use, or operation of a motor vehicle. This right of subrogation exists only to the extent that basic economic loss benefits are paid or payable and only to the extent that recovery on the claim absent subrogation would produce a duplication of benefits or reimbursement of the same loss.

Appellant argues that the first sentence of subdivision 3 "evidences an intent on the part of the legislature that out-of-system tort-feasors be required to put back into the no-fault system benefits occasioned by their negligence." Appellant interprets the second sentence of subdivision 3 as a limit on subrogation rights only if those rights are asserted by the reparation obligor against its own insured, and argues that the limitation does not apply to a subrogation claim against a third-party tortfeasor. Appellant therefore seeks to assert a subrogation claim directly against respondent bars to recover the sum it paid its insured as a consequence of respondents' alleged

---

**1.** While Mutual Service did not appeal the denial of its motion to intervene in Diane Milbrandt's action, we note that its motion to intervene should have been granted. *See Miller v. Astleford Equipment Co.,* 332 N.W.2d 653 (Minn. 1983).

violation of the Dram Shop Act. Respondents, however, contend that the statute provides a reparation obligor with a subrogation right only against its insured and only if its insured obtains a double recovery. The court of appeals, interpreting the statute literally, ruled that an insurer that pays basic economic loss benefits to an insured may assert a subrogation claim only if the insured receives a double recovery.

We agree with the court of appeals. Although subdivision 3 indicates that the legislature intended reparation obligors to recover from tortfeasors basic economic loss benefits paid to insureds, the legislature clearly limited this right to cases where insureds recover duplicate benefits from tortfeasors. Appellant asks the court to find a general policy in the No-Fault Act favoring subrogation claims against tortfeasors by reading the first sentence of subdivision 3 broadly, and then seeks a narrow interpretation of the explicit limitation on subrogation rights in the second sentence of subdivision 3. The statute, however, means exactly what it says: a reparation obligor may assert a subrogation claim[2] to recover basic economic loss benefits paid only when the insured has received a double recovery. Because the insurer's right to recover benefits paid its insured exists only when the insured obtains double recovery, the right of recovery recognized in subdivision 3 may be asserted only against the insured. When seeking to recover under subdivision 3, the burden is on the insurer to show that the insured has been overcompensated.

2. Appellant claims that if it has no right of subrogation under section 65B.53, subd. 3, the court should recognize a common law right of subrogation that would allow it to proceed against the alleged tortfeasors. Appellant argues that subdivision 3, by limiting subrogation to instances of double recovery by the insured, operates inequitably in this case by shielding alleged

violators of the Dram Shop Act from full liability for their actions. This, appellant urges, constitutes a windfall for respondent bars at the expense of appellant and forces the no-fault system to compensate the victims of out-of-system tortfeasors.

We hold, however, that section 65B.53, subd. 3, provides the exclusive subrogation remedy available to a reparation obligor that pays or is obligated to pay basic economic loss benefits. Recognition of a separate common law subrogation right would upset the balance struck by the No-Fault Act between fault-based and no-fault systems for the compensation of accident victims. Subrogation rights function in a fault-based compensation system as a means to distribute losses to the party at fault, as appellant seeks to do here. Subrogation rights are therefore

> important * * * to the effective functioning of a fault-based compensation system. The existence of such rights allows insurers to compensate their insureds prior to any litigation of the fault question. Through the exercise of subrogation and indemnity rights, the losses arising out of an automobile accident can be shifted onto the party who bears the legal responsibility for the injuries suffered. Additionally, the shifting of such losses allows insurers to base premiums on the injury-causing capacity of the insured as a driver, a basic tenet of the fault-based compensation system.

Note, *Subrogation and Indemnity Rights Under the Minnesota No-Fault Automobile Insurance Act,* 4 Wm. Mitchell L.Rev. 119, 125–26 (1978). Under the No-Fault Act, however, appellant has a duty to pay basic economic loss benefits to its insured without regard to fault. Since the no-fault insurer assesses premiums to pay for injury to its insured regardless of fault, the insurer is paying out only what its insured paid for, and thus would receive a windfall if allowed to recover from the tortfeasor basic economic loss benefits paid the in-

---

**2.** The right of the insurer against the insured arises only in the event of a double recovery by the latter, not by reason of the tort. We refer to the right of recovery as a subrogation right, however, because that is what the statute terms it. It is of course not true subrogation.

sured. As the court of appeals correctly noted, subrogation rights, because they are based upon the concept of fault, directly impact upon the operation of a no-fault system. The legislature accommodated the fault and no-fault systems by subordinating the no-fault insurer's subrogation right to its obligation to pay basic economic loss benefits. The extent of subrogation rights to be granted a reparation obligor that pays or is obligated to pay basic economic loss benefits is a matter for the legislature; we decline to recognize the subrogation right urged by appellant under common law.

■ The No-Fault Act, by creating a mechanism to recover damages regardless of fault while retaining rights to recover damages based upon fault, created the possibility of double recovery for the insured. The only subrogation right needed to reconcile the two systems of recovery is thus a right of recovery for the insurer in the event its insured receives a double recovery. The legislature provided this right of recovery in section 65B.53, subd. 3. We recognize that in the context of settlement, especially in the absence of specified payment in the settlement of basic economic loss items, it will be difficult for the insurer to prove that its insured has received double recovery. The statute, however, requires the insurer to prove that its insured has received double recovery as a prerequisite to the insurer's right to recover for basic economic loss benefits paid.

Affirmed.