Henry J. MILLER, Jr., et al., Plaintiffs,

Prudential Property & Casualty
Insurance Company, et al.,
Intervenors, Appellants,

v.

ASTLEFORD EQUIPMENT CO.,
INC., Respondent,

and

PRUDENTIAL PROPERTY & CASUAL-
TY INSURANCE COMPANY, et al.,
Intervenors, Appellants,

v.

Henry J. MILLER, Jr., et al., Plaintiffs.

No. C3–85–1193.

Court of Appeals of Minnesota.

Dec. 10, 1985.

Review Denied Feb. 14, 1986.

Robert G. Haugen, Johnson & Lindberg, P.A., Minneapolis, for Prudential Property & Cas. Ins. Co., et al.

Gerald M. Linnihan, Marie A. Darst, Jardine, Logan & O'Brien, St. Paul, for Astleford Equipment Co., Inc.

Heard, considered and decided by CRIPPEN, P.J., and WOZNIAK and LANSING, JJ.

## OPINION

LANSING, Judge.

The appellant insurance companies paid basic economic loss benefits to Henry Miller for injuries he sustained due to the negligence of Astleford Equipment Co. When Miller brought an action against Astleford, the appellants intervened to protect their potential subrogation interest. Miller settled with Astleford before trial. The trial court denied recovery to the appellants on the ground that they had not shown that Miller had received duplicate benefits, as required by Minn.Stat. § 65B.53, subd. 3 (1984). They appeal, and we affirm.

## FACTS

The parties stipulated to the following facts for the purpose of determining appel-

lants' subrogation rights. In January 1981 Henry Miller went to pick up his motorhome at Astleford, an automotive service facility, where it had been left for repairs. The vehicle's engine would not start so an employee of Astleford hotwired it from underneath. Because the motorhome had been left in gear, it moved forward, without a driver, and struck Henry Miller.

At the time of the accident, the vehicles owned by Miller and his wife, Barbara, were insured by Prudential and Allstate. The insurers paid $40,000 in basic economic loss benefits to Miller and moved to intervene in his negligence action against Astleford. The trial court initially denied intervention, but on appeal the supreme court reversed, see Miller v. Astleford Equipment Co., 332 N.W.2d 653 (Minn.1983), saying the asserted subrogation interest was sufficient for intervention under Minn.R. Civ.P. 24.01.

After intervening, appellants asserted (1) a subrogation claim against Astleford for basic economic loss benefits paid to Miller, and (2) a reimbursement claim against the Millers should it be determined that Henry Miller's injuries did not "arise out of the maintenance or use of a motor vehicle," see Minn.Stat. § 65B.44 (1984). In April 1984 the trial court denied appellants' reimbursement claim against the Millers on the ground that Miller's injuries arose out of the maintenance or use of an automobile as a matter of law. The insurers do not appeal this order.

Before trial of the liability action the Millers settled all their claims against Astleford. For purposes of this action appellants stipulated with Astleford that no part of the settlement

> was made or intended to be made * * * for damages or expenses for which the Prudential Property & Casualty Insurance Company and the Allstate Insurance Company have made payment for economic loss benefits * * * and that the settlement intended that [the Millers] receive no duplication of benefits or reimbursement for the same loss for which

basic economic loss benefits were paid. * * *

They also stipulated that Astleford's negligence caused Miller's injuries and that Astleford's negligence was equal to or greater than any negligence of Miller. Further, they agreed that if appellants were entitled to recover, the damages were $40,000.

The trial court concluded that the attempt to hotwire the Millers' vehicle constituted negligence other than negligence in the maintenance, use or operation of a motor vehicle; appellants chose not to dispute this conclusion on appeal. The trial court also concluded that appellants had no subrogation interest because Miller had not received a duplication of benefits. See Minn.Stat. § 65B.53, subd. 3.

## ISSUE

Are appellants entitled to recover basic economic loss benefits paid to their insured from the respondent tortfeasor?

## ANALYSIS

A no-fault carrier's right to recover basic economic loss benefits is governed by statute:

> A reparation obligor paying or obligated to pay basic economic loss benefits is subrogated to a claim based on an intentional tort, strict or statutory liability, or negligence other than negligence in the maintenance, use, or operation of a motor vehicle. *This right of subrogation exists only to the extent that basic economic loss benefits are paid or payable and only to the extent that recovery on the claim absent subrogation would produce a duplication of benefits or reimbursement of the same loss.*

Minn.Stat. § 65B.53, subd. 3 (emphasis added).

In *Milbrandt v. American Legion Post of Mora,* 372 N.W.2d 702 (Minn.1985), the supreme court affirmed summary judgment against an insurer who had brought a subrogation action against a tortfeasor to recover basic economic loss benefits. The court held:

The statute * * * means exactly what it says: a reparation obligor may assert a subrogation claim to recover basic economic loss benefits paid only when the insured has received a double recovery. Because the insurer's right to recover benefits paid its insured exists only when the insured obtains double recovery, *the right of recovery recognized in subdivision 3 may be asserted only against the insured.* When seeking to recover under subdivision 3, the burden is on the insurer to show that the insured has been overcompensated.

*Id.,* 372 N.W.2d at 705 (footnote omitted) (emphasis added).

In addition, the court held that there was no common-law subrogation remedy available to recover basic economic loss benefits. This is because subrogation rights function in a fault-based compensation system to distribute losses to the party at fault; however, under the no-fault system the insurer has a duty to pay basic economic loss benefits without regard to fault:

The No-Fault Act, by creating a mechanism to recover damages regardless of fault while retaining rights to recover damages based upon fault, created the possibility of double recovery for the insured. The only subrogation right needed to reconcile the two systems of recovery is thus a right or recovery for the insurer in the event its insured receives a double recovery. * * * We recognize that *in the context of settlement, especially in the absence of specified payment in the settlement of basic economic loss items, it will be difficult for the insurer to prove that its insured has received double recovery. The statute, however, requires the insurer to prove that its insured has received double recovery as a prerequisite to the insurer's right to recover for basic economic loss benefits paid.*

*Milbrandt,* 372 N.W.2d at 705–06 (emphasis added). *Accord Home Mutual Insurance Co. v. Dean,* 367 N.W.2d 568, 569 (Minn.Ct.App.1985) (it is the intent of the No-Fault Act that reparation obligors, rather than tortfeasors, bear the burden of compensating the insured for basic economic loss benefits).

Appellants attempt to distinguish *Milbrandt* on the basis that the insurer there had not intervened in the lawsuit; however, the language in *Milbrandt* leaves no doubt that the decision applies to all reparation obligors who wish to assert claims for basic economic loss benefits under § 65B.53, subd. 3, not just to those who do not intervene. The insurer's interest in intervening was explained in *Miller v. Astleford Equipment*:

While we are mindful that * * * Prudential has only *asserted* [a subrogation] interest, and that Prudential's actually establishing the asserted interest involves resolution in its favor of complex issues of statutory construction as well as factual matters, Minn.R.Civ.P. 24.01 requires merely a claimed interest, not a certain one. * * *

* * * Deduction of the value of basic economic loss benefits [pursuant to the offset provisions of Minn.Stat. § 65B.51, subd. 1 (1984)] from any recovery to which the Millers are entitled may, however, destroy Prudential's asserted subrogation right. The Millers, on the other hand, have no incentive to resist application of the offset provisions, for recovery of the value of basic economic loss benefits would simply expose them to Prudential's claim for reimbursement. Consequently, it appears that Prudential's interest will be adequately protected only by intervention.

332 N.W.2d at 654–55 (emphasis added).

 Reading these two cases together, it is clear that intervention may protect a subrogation claim for basic economic loss benefits, but that the insurer is limited to recovering *from the insured,* not the tortfeasor, any amounts that represent duplicate benefits. Appellants therefore have no subrogation claim against Astleford. Appellants never contended in their claim against the Millers that the Millers received a double recovery; in fact, they stipulated with Astleford that no part of the settle-

ment duplicated basic economic loss bene-
fits. The trial court properly denied appel-
lants' subrogation claim.

## DECISION

Appellants have no subrogation claim for
basic economic loss benefits against a tort-
feasor.

Affirmed.