Thelma GRUMAN, Respondent,

v.

Ralph HENDRICKSON, Burlington Northern Railroad, Respondents,

and

Western Fire Insurance Company, Intervenor, Appellant.

No. C6–87–1452.

Court of Appeals of Minnesota.

Dec. 15, 1987.

Joel A. Fisher, Murrin Metropolitan Legal Center, Minneapolis, for Thelma Gruman.

Marlene R. Tschida, Gislason, Martin & Varpness, Edina, for Ralph Hendrickson.

Susan D. Thurmer, Burlington Northern Railroad, St. Paul, for Burlington Northern Railroad.

Daniel J. Roth, Austin & Roth, Minneapolis, for Western Fire Ins. Co., intervenor.

Heard, considered and decided by HUSPENI, P.J., and SEDGWICK and LOMMEN,* JJ.

## OPINION

### A. PAUL LOMMEN, Judge.

Respondent Gruman's personal injury claim against Hendrickson and Burlington Northern was submitted to arbitration. Appellant no-fault carrier moved to intervene, but that motion was denied. Following the arbitration award, appellant again attempted to intervene and vacate the arbitration award. Appellant further requested, upon judgment entered in favor of Gruman, it receive the amount of no-fault benefits paid to Gruman. The trial court denied appellant's motion and this appeal followed.

Appellant argues the trial court erred because (1) appellant has met the four-part test for intervention as a matter of right, (2) the arbitration award does not reflect appellant's statutorily protected subrogation claim, and (3) the arbitrator erred by deducting the value of no-fault benefits paid to plaintiff from the award. We affirm.

## FACTS

Respondent Thelma Gruman (Gruman) initiated a lawsuit against defendants Ralph Hendrickson (Hendrickson) and Burlington Northern Railroad (Burlington Northern). Gruman alleged to have sustained personal injuries while a passenger in a motor vehicle owned and operated by Hendrickson. Hendrickson was operating his automobile over railroad tracks owned by Burlington Northern. Gruman's injuries occurred when Hendrickson's vehicle struck allegedly defective tracks of Burlington Northern.

On the date of the accident, Gruman was insured by appellant, Western Fire Insurance Company. Appellant paid Gruman medical expense benefits totaling $2,951.41 and wage loss replacement service benefits of $6,052.33, for a total no-fault benefit payment of $9,003.74.

In order to protect its subrogation claim, appellant made a motion to intervene. On January 31, 1986, the trial court issued an order denying appellant's request for intervention on the basis the motion was premature and that appellant had no subrogation claim for basic economic loss benefits.

On March 27, 1987, the case proceeded to arbitration pursuant to rule 5 of the Special Rules of Practice for the Fourth Judicial District. An award filed April 7, 1987 gave judgment for Gruman against Hendrickson and Burlington Northern for $12,000 jointly and severally. Hendrickson was assessed 15% at fault and Burlington Northern 85%. The award expressly provided that while all parties stipulated to amounts paid, Hendrickson and Burlington Northern contested the propriety or reasonableness of the payments. The award also specifically provided it was a net award and did not include basic economic loss benefits paid to date. No request for a trial de novo was made on behalf of any party and judgment was entered May 8, 1987.

By motion and amended motion dated May 1, 1987 and June 5, 1987, appellant renewed its motion to intervene and requested the arbitration award and judgment be vacated or amended to reflect appellant's subrogation claim.

By order filed June 25, 1987, the trial court denied appellant's motion and amended motion. The trial court found appellant's cause of action, if any, was against Gruman and that appellant's claim for subrogation had not arisen because there had been no double recovery by Gruman.

This appeal followed.

## ISSUES

1. Did the trial court err in refusing to allow appellant to intervene in this suit as a matter of right?

2. Did the trial court err in refusing to vacate the arbitration award?

## ANALYSIS

■ 1. Appellant argues the trial court erred in denying appellant's motion to in-

---

* Acting as judge of the Court of Appeals by ap-    pointment pursuant to Minn. Const. art. 6, § 2.

tervene. Appellant's intervention was sought pursuant to Rule 24.01, which provides:

Upon timely application anyone shall be permitted to intervene in an action when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Minn.R.Civ.P. 24.01. In reviewing orders concerning intervention as of right, this court will independently assess the appropriateness of the order. *Norman v. Refsland,* 383 N.W.2d 673, 676 (Minn.1986). We are not held to a standard of review requiring a clear abuse of discretion before we may reverse a trial court's denial of a motion to intervene as a matter of right. *Id.*

Rule 24.01 establishes a four-part test a nonparty must meet before being allowed to intervene as a matter of right: (1) a timely application for intervention; (2) an interest relating to the property or transaction which is the subject of the action; (3) circumstances demonstrating the disposition of the action may as a practical matter impair or impede the party's ability to protect that interest; and (4) a showing the party is not adequately represented by the existing parties. *Minneapolis Star & Tribune v. Schumacher,* 392 N.W.2d 197, 207 (Minn.1986).

The spirit behind Rule 24 is to encourage all legitimate interventions, and the rule is to be liberally applied. *Engelrup v. Potter,* 302 Minn. 157, 166, 224 N.W.2d 484, 489 (1974). Rule 24 is designed to protect nonparties from having their interests adversely affected by litigation conducted without their participation. *Erickson v. Bennett,* 409 N.W.2d 884, 887 (Minn.Ct. App.1987).

■ Appellant argues it has met all four tests of Rule 24.01 and therefore should have been allowed to intervene. We agree. The Minnesota Supreme Court has held a subrogation claim is sufficient to support

intervention. *Miller v. Astleford Equipment Co., Inc.,* 332 N.W.2d 653, 654 (Minn. 1983). *Miller* involved a fact situation very similar to this case in which the supreme court concluded the deduction of the value of basic economic loss benefits from any recovery could destroy the asserted subrogation right. *Id.* at 655. The supreme court recognized the insurer's interest would only be adequately protected by intervention. *Id.* Again in *Milbrandt v. American Legion Post of Mora,* 372 N.W. 2d 702 (Minn.1985), the supreme court stated the appellant insurance company should have been allowed to intervene when it claimed a subrogation interest in the suit. *Id.* at 704 n. 1.

We conclude appellant should have been allowed to intervene in this suit. However, that right of intervention is only for the purposes of protecting appellant's statutory right of subrogation, if and when it arises.

■ Respondent argues an insurer paying basic economic loss benefits to its insured under the No-Fault Automobile Insurance Act has a subrogation right only against its insured and only when the recovery represents in some measure a duplication of those benefits.

According to the No-Fault Automobile Insurance Act:

A reparation obligor paying or obligated to pay basic economic loss benefits is subrogated to a claim based on an intentional tort, strict or statutory liability, or negligence other than negligence in the maintenance, use, or operation of a motor vehicle. This right of subrogation exists only to the extent that basic economic loss benefits are paid or payable and only to the extent that recovery on the claim absent subrogation would produce a duplication of benefits or reimbursement of the same loss.

Minn.Stat. § 65B.53, subd. 3 (1986). In *Milbrandt,* the supreme court affirmed a summary judgment against an insurer who brought a subrogation claim to recover basic economic loss benefits. The court stated:

Although subdivision 3 indicates that the legislature intended reparation obligors to recover from tortfeasors basic economic loss benefits paid to insureds, the legislature clearly limited this right to cases where insureds recover duplicate benefits from tortfeasors.

*Milbrandt,* 372 N.W.2d at 705.

The court went on to state in strong language:

> The statute * * * means exactly what it says: a reparation obligor may assert a subrogation claim to recover basic economic loss benefits paid only when the insured has received a double recovery. Because the insurer's right to recover benefits paid its insured exists only when the insured obtains double recovery, the right of recovery recognized in subdivision 3 may be asserted only against the insured. When seeking to recover under subdivision 3, the burden is on the insurer to show that the insured has been overcompensated.

*Id.* (footnote omitted). The court noted the right of the insurer against the insured arises only in the event of a double recovery by the insured, not by reason of tort. *Id.* n. 2. The reference to the right of recovery as a subrogation right is a statutorily created right and is not true subrogation. *Id.; see Miller v. Astleford Equipment Co., Inc.,* 378 N.W.2d 820, 822 (Minn. Ct.App.1985), *pet. for rev. denied* (Minn. Feb. 14, 1986).

Respondent argues appellant's statutory right of subrogation is not against Burlington Northern and Hendrickson because subrogation in terms of a claim against the tortfeasor does not exist in Minnesota. Therefore, an insurance company can only recover benefits paid when the insured obtains double recovery. *Milbrandt,* 372 N.W.2d at 705; *Peters v. B.P. & E., Inc.,* 397 N.W.2d 449, 451 (Minn.Ct.App.1986).

Because there has been no double recovery by Gruman, respondent argues appellant has no subrogation claim. We agree. In light of the fact appellant's statutory subrogation right never arose under Minn. Stat. § 65B.53, subd. 3, we conclude the trial court did not commit reversible error by refusing to allow intervention.

2. Appellant argues the trial court erred in refusing to vacate the arbitration award or judgment because the arbitrator erred in its application of the law. Appellant maintains the arbitrator erred by deducting the value of no-fault benefits paid to respondent from the award. Appellant claims it is entitled to relief pursuant to Minn.R.Civ.P. 60.02(1) and (6).

A party seeking to vacate a judgment under rule 60.02 must show: (1) a reasonable claim on the merits; (2) a reasonable excuse for the neglect; (3) due diligence after notice of entry of judgment; and (4) that no substantial prejudice will result to the opponent. *Hinz v. Northland Milk & Ice Cream Co.,* 237 Minn. 28, 30, 53 N.W. 2d 454, 456 (1952). Appellant argues it has complied with Rule 60.02 in all these respects. Appellant further argues the subrogation provision, Minn.Stat. § 65B.53, subd. 3, not the offset provision, Minn.Stat. § 65B.51, subd. 1, should control this case because Burlington Northern's negligence was negligence other than negligence in the maintenance, use, or operation of a motor vehicle.

Appellant contends the arbitrator relied on Minn.Stat. § 65B.51, subd. 1 to deduct the no-fault benefits paid. Appellant argues the arbitrator should have used Minn. Stat. § 65B.53, subd. 3 because section 65B.51 deals with actions limited to some type of motor vehicle use. Appellant maintains Burlington Northern's negligence is not connected to motor vehicle use.

Appellant's reliance on Rule 60.02 as a means to vacate the arbitration award is misplaced. The Special Rules of Practice for the Fourth Judicial District specifically provide judgment entered upon an arbitration award may not be attacked or set aside except as provided in Rule 5.11(d) (1986):

> A party against whom a judgment is entered pursuant to an arbitration award may, within six months after its entry, move to vacate the judgment on the ground that the arbitrator was subject to a disqualification not disclosed before the hearing and of which the arbitrator was

then aware, or upon one of the grounds set forth in the Uniform Arbitration Act, Chapter 572, Minnesota Statutes, and upon no other grounds. The motion shall be heard by the court upon notice to the adverse parties and to the arbitrator, and may be granted only upon clear and convincing evidence that the grounds alleged are true, and that the motion was made as soon as practicable after the moving party learned of the existence of those grounds.

*Id.* Furthermore, the chapter 572 provisions for vacating an arbitration award provide in part:

Upon application of a party, the court shall vacate an award where:

(1) The award was procured by corruption, fraud or other undue means;

(2) There was evident partiality by an arbitrator appointed as a neutral or corruption in any of the arbitrators or misconduct prejudicing the rights of any party;

(3) The arbitrators exceeded their powers;

(4) The arbitrators refused to postpone the hearing upon sufficient cause being shown therefor or refused to hear evidence material to the controversy or otherwise so conducted the hearing, contrary to the provisions of Section 5, as to prejudice substantially the rights of a party; or

(5) There was no arbitration agreement and the issue was not adversely determined in proceedings under Section 572.09 and the party did not participate in the arbitration hearing without raising the objection.

But the fact that the relief was such that it could not or would not be granted by a court of law or equity is not ground for vacating or refusing to confirm the award.

Minn.Stat. § 572.19, subd. 1 (1986). Respondent asserts subdivision 1 does not allow the vacation of a judgment based upon an alleged error of law committed in the arbitration award. *Grudem Brothers Co.*

*v. Great Western Piping Corp.*, 297 Minn. 313, 316, 213 N.W.2d 920, 922–23 (1973).

According to the supreme court:

The arbitrators make the final determination of all questions submitted to them whether legal or factual. The court will not overturn these conclusions even if it believes the arbitrators made an incorrect conclusion.

*Id.* at 316–17, 213 N.W.2d at 922–23. It is well established that an arbitration award "will be vacated only upon proof of one or more of the grounds stated in Minn.Stat. § 572.19 and not because the court disagrees with the decision on the merits." *AFSCME Council 96 v. Arrowhead Regional Corrections Board*, 356 N.W.2d 295, 299–300 (Minn.1984). Thus, the applicable standard of review is determined from the grounds upon which a party seeks to vacate the award. *Koranda v. Austin Mutual Insurance Co.*, 397 N.W.2d 357, 360 (Minn.Ct.App.1986), *pet. for rev. denied* (Minn. Feb. 13, 1987).

■ Respondent argues there was no error of law committed by the arbitrator. The award was clear the no-fault benefits paid by appellant to the insured were deducted. Respondent admits intervention may protect a subrogation claim for basic economic loss benefits, but maintains an insurer is limited to a recovery of no-fault benefits paid from the insured, not the tortfeasor, and such recovery is limited to amounts that represent a duplicate recovery to the insured. We agree.

■ The facts of this case show the insured did not receive a double recovery. The arbitration award clearly excluded no-fault benefits paid to the insured from the award. Therefore, appellant's subrogation right never matured. Appellant contends there is no incentive on the part of the insured to litigate once no-fault benefits are paid. Thus appellant feels it should be able to intervene to protect its subrogation right. Under the no-fault act, however, appellant has a duty to pay basic economic loss benefits to its insured without regard to fault. The very intent of the no-fault

act results in the reparation obligor, not the tortfeasor, compensating the insured for his injuries. *Home Mutual Insurance Co. v. Dean*, 367 N.W.2d 568, 569 (Minn.Ct. App.1985).

■ Appellant has not met its burden of proof to set aside the arbitration award. However, given the deference afforded arbitrators, we will not vacate the award.

## DECISION

In light of the supreme court decision in *Miller*, the trial court erred in refusing to allow appellant to intervene. However, because there was no double recovery, appellant's subrogation right did not mature and the trial court did not commit reversible error. The trial court did not err in refusing to vacate the arbitration award given the deference afforded arbitrators.

Affirmed.

HUSPENI, J., dissents.

HUSPENI, Judge (dissenting).

I respectfully dissent. The majority agrees, as do I, that appellant should have been permitted to intervene. However, the majority concludes (after observing that the right of intervention is for the purpose of protecting appellant's statutory right of subrogation if and when it arises) that because Gruman received no double recovery, appellant has no subrogation claim. That analysis, I submit, results in placing appellant in an impossible situation. This panel defends appellant's right to intervene; the *Milbrandt* court, in a footnote, advises that even though the issue of denial of intervention had not been appealed, intervention should have, in fact, been granted. *Milbrandt*, 372 N.W.2d at 704 n. 1. The court in *Miller* reversed the trial court's denial of the insurer's motion to intervene. Why do appellate courts protect with such vigor an insurer's right to intervene if, in fact, that right is as hollow as the majority seems to deem it? What right does an insurer pursue upon intervention? Is it not the right

to assure that its insured collects total damages due from the tortfeasor, so that the insurer may then recover from its insured to the extent its insured has received a double recovery? I submit that the court in *Miller* had such a possibility in mind when it wrote:

The second requirement for intervention of right is that the applicant must be "so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties." Minn.Stat. § 65B.53, subd. 3 (1982) limits an insurer's right of subrogation to amounts necessary to prevent a double recovery by the injured person. Minn. Stat. § 65B.51, subd. 1 (1982) requires that when injury is motor vehicle related in no-fault terms, no-fault benefits paid must be deducted from any tort recovery. Application of the offset provisions of § 65B.51 is, of course, in [the tortfeasor's] interest. Deduction of the value of basic economic loss benefits from any recovery to which the [insureds] are entitled may, however, destroy [insurer's] asserted subrogation right. The [insureds], on the other hand, have no incentive to resist application of the offset provisions, for recovery of the value of basic economic loss benefits would simply expose them to [insurer's] claim for reimbursement. Consequently, it appears that [insurer's] interest will be adequately protected only by intervention.

*Miller*, 332 N.W.2d at 655.

If appellant had been permitted to intervene, it would have been a party to this action. Perhaps it would have successfully protected its interests through participation in the ensuing arbitration. Perhaps it would have failed and the arbitrator may have entered an award identical to the one it actually did enter. However as a party, appellant could then have requested a trial pursuant to Rule 5.12 of the Special Rules for the Fourth Judicial District. Thus, any error of law in the arbitrator's award

would have been subject to correction upon trial.

I agree with the majority that the scope of review of an arbitrator's award is narrow. However, this matter should never have proceeded to arbitration without appellant. The majority, by agreeing that appellant should have been permitted to intervene, in effect concedes the point. I cannot accept as sound any legal analysis which strands a party (or one who admittedly *should* have been a party) in a position such as appellant here occupies.

I would reverse.