Joann F. PETRY, Plaintiff-Appellant,

v.

## ST. PAUL FIRE & MARINE INSURANCE COM-PANY, Defendant-Respondent.†

Court of Appeals

*No. 88-2164. Submitted on briefs May 3, 1989.—Decided June 13, 1989.*

(Also reported in 444 N.W.2d 428.)

† Petition to review denied.

[redacted]

For plaintiff-appellant there were briefs by *James A. Drill* and *Lisa M. Drill* of *Doar, Drill & Skow, S.C.*, New Richmond.

For defendant-respondent there was a brief by *Kay Nord Hunt* and *Thomas R. Jacobson* of *Lommen, Nelson, Cole & Stageberg, P.A.*, Hudson.

Before Cane, P.J., LaRocque and Myse, JJ.

MYSE, J.   Joann Petry appeals a judgment and order reducing part of her damage award[1] against St. Paul Fire & Marine Insurance Company. Joann argues that the trial court erred in reducing the damage award against St. Paul's by 80% of the $22,000, where, as here, the no-fault insurance contract specified that the subrogated insurer had no subrogation right until Joann obtained a double recovery. Because Joann's no-fault insurer's subrogation right was not barred by a statute of limitations at the time of the trial, we conclude that St. Paul was not entitled to the set-off. Therefore, we reverse.

This case arose out of a single-car accident that took place in Wisconsin involving a vehicle driven by Mark Schurke in which Timothy Petry was a passenger. Both men were killed in the accident.

Schurke had primary coverage with General Casualty Insurance Company and excess coverage with St. Paul. The Petrys, Minnesota residents, had purchased a policy containing no-fault automobile insurance from Milwaukee Mutual Insurance Company. As required

---

[1] The court reduced the award by 80% of a $22,000 payment made to Petry by her no-fault insurer, Milwaukee Mutual Insurance Company.

under both the terms of the policy and Minnesota law, Milwaukee Mutual paid Timothy's widow, Joann, $2,000 for funeral expenses and $20,000 for survivor's economic loss benefits. She then proceeded to sue Schurke's estate, General Casualty, and St. Paul.

Before the trial, Joann settled with General Casualty and proceeded against St. Paul to the extent of its policy limits. The jury found Schurke 80% causally negligent and Timothy Petry 20% causally negligent and awarded damages in the amount of $810,240.16. St. Paul then argued that it was entitled to a credit against the damage award in the amount of 80% of the no-fault benefits Milwaukee Mutual paid to Joann. Relying on the holding in *Lambert v. Wrensch*, 135 Wis. 2d 105, 399 N.W.2d 369 (1987), the trial court agreed, concluding that proceeds paid pursuant to the no-fault policy were not a collateral source because Milwaukee Mutual had a right of subrogation, that Milwaukee Mutual's subrogation right had lapsed because it did not bring a claim within three years, and that St. Paul accordingly was entitled to the credit. After the trial court issued this decision, the parties settled, reserving for appeal only the issue of whether this credit was appropriate.

██

The collateral source rule recognizes the inequities involved in reducing a negligent defendant's liability by the amount of benefits an injured plaintiff receives from an independent source. On the other hand, concerns surrounding the potential for double recovery have been raised with respect to this rule. While the express provision for subrogation rights in most insurance policies has for the most part resolved this conflict, problems such as the one raised here still periodically arise.

St. Paul argues that the holding in *Lambert* requires that it be given a credit for the amount of the no-fault

payments. In *Lambert,* the court concluded that the tort-feasor and his insurer are entitled to a credit for payments the plaintiff received from another insurer 1) if the proceeds were paid out pursuant to an indemnity, as opposed to an investment policy; and 2) if the subrogated insurer's rights are barred because the applicable limitations period has run. *Id.* at 105, 399 N.W.2d at 369. St. Paul contends that *Lambert* applies because both of these conditions were met. We disagree.

Because the right of subrogation is governed by contract, we apply the provisions of the insurance contract. The Milwaukee Mutual policy contains the following provision:

> (4) Subrogation. Subject to any applicable limitations set forth in the Minnesota No-Fault Automobile Insurance Act, in the event of any payment under this coverage, we are subrogated to the rights of the person to whom or for whose benefit such payments were made, to the extent of the payments
> . . ..

Under Minnesota law, no automobile insurance policy may be issued unless it contains no-fault coverage for basic economic loss benefits. Minn. Stat. sec. 65B.49 (subd. 1) (1988). "Basic economic loss benefits" include medical expenses, disability and income loss benefits, funeral and burial expenses, replacement service and survivors economic loss benefits. Minn. Stat. sec. 65B.44.

The insurance contract established subrogation rights in accordance with Minnesota law, which provides:

> A[n] [insurer] paying or obligated to pay basic or optional economic loss benefits is subrogated to the claim for the recovery of damages for economic loss that the person to whom the basic or optional eco-

346

nomic loss benefits were paid or payable has against another person whose negligence in another state was the direct and proximate cause of the injury for which the basic economic loss benefits were paid or payable. *This right of subrogation exists* only to the extent that basic economic loss benefits are paid or payable and *only to the extent that recovery on the claim absent subrogation would produce a duplication of benefits or reimbursement of the same loss.* (Emphasis supplied.)

Minn. Stat. sec. 65B.53 (subd. 2) (1988). Because the subrogated insurer's right to recover benefits only exists where the insured receives a double recovery, this subrogation right may only be exercised against the insured. *Milbrandt v. American Legion Post,* 372 N.W.2d 702, 705 (Minn. 1985). Although the statute refers to this right as one of subrogation, the *Milbrandt* court noted that it is not true subrogation. *Id.* at 705 n. 2. The rationale behind this rule is that "[s]ince the no-fault insurer assesses premiums to pay for injury to its insured regardless of fault, the insurer is paying out only what its insured paid for, and thus would receive a windfall if allowed to recover from the tortfeasor basic economic loss benefits paid the insured." *Id.* at 705–06.

The burden is on the insurer to prove that the insured has been overcompensated. *Id.* at 705. If the insured had not obtained a double recovery, the no-fault insurer's subrogation claim never arose. *Gruman v. Hendrickson,* 416 N.W.2d 497, 501 (Minn. App. 1987). For this reason, the court in *Gruman* refused to find reversible error where the trial court denied the no-fault insurer's motion to intervene in the insured's action. While the no-fault insurer may wish to intervene in an

action to protect its subrogation rights if and when they arise, it need not do so. *Id.* at 500.

*Lambert* only applies where the insurance policy is one of indemnity, rather than investment, and where the subrogated insurer's claim is barred by the statute of limitations. Milwaukee Mutual's right cannot be time barred before it arises. *See, e.g., Hansen v. A.H. Robins Co.,* 113 Wis. 2d 550, 335 N.W.2d 578 (1983). Under the terms of the' insurance contract, Milwaukee Mutual's subrogation claim did not even exist for limitations purposes until Joann obtained a double recovery. Only then may Milwaukee Mutual attempt to recover the amount of no-fault benefits from Joann. Therefore, any subrogation claim Milwaukee Mutual may have against Joann is not time barred. For this reason, we conclude that *Lambert* does not apply, and St. Paul is not entitled to receive the benefit of the proceeds paid under the no-fault policy.[2] The decision of the trial court is reversed and the matter remanded with instructions to enter judgment against the defendant without a set-off for the proceeds Joann received from Milwaukee Mutual.

*By the Court.*—Judgment and order reversed and cause remanded with directions.

---

[2] Because of this holding, we need not address whether the no-fault policy constitutes an investment or an indemnity policy.