In re the Matter of Peggy A. LUTHEN,
petitioner, Appellant,

v.

Ricky LUTHEN, Respondent Below,

and

Itasca County Health and Human
Services, intervenor,
Respondent,

Linda G. Longrie, intervenor,
Respondent.

No. C3–98–2277.

Court of Appeals of Minnesota.

July 13, 1999.

Rodney G. Otterness, Grand Rapids, for appellant.

John J. Muhar, Itasca County Attorney, Heidi Pertlicek, Assistant County Attorney, Grand Rapids, for respondent Itasca County.

Ellen E. Tholen, Grand Rapids, for respondent Linda G. Longrie.

Considered and decided by RANDALL, Presiding Judge, DAVIES, Judge, and G. BARRY ANDERSON, Judge.

## OPINION

RANDALL, Judge.

Appellant argues the district court erred when it allowed the county and the mother of a child born out-of-wedlock to intervene in the dissolution of the marriage of the child's father to appellant. Appellant also claims the district court erred when it did not require the third-party intervenor to post security pursuant to Minn. R. Civ. P. 65.03. We reverse.

## FACTS

On July 16, 1998, appellant Peggy Ann Luthen commenced this dissolution action against respondent Ricky J. Luthen. The couple had three children during the marriage. Appellant originally filed a dissolution action in June 1996 because of Ricky Luthen's relationship with intervenor Linda G. Longrie. She withdrew her petition when she and Ricky Luthen attempted a reconciliation and Ricky Luthen promised not to see Longrie again. But after learning that Ricky Luthen fathered a child, T.L., with Longrie, appellant commenced the present dissolution action.

Appellant and Ricky Luthen negotiated the terms of a marital termination agreement (MTA) that was forwarded to the district court, along with a proposed judgment and decree. The parties were appearing pro se. The MTA provided that the parties would share joint legal and physical custody of the three children; appellant would pay $1,365 per month in child support; she would maintain health insurance for the children and the parties would split unreimbursed health costs; appellant would be entitled to remain on the homestead; there would be no spousal maintenance; and Ricky Luthen would be covered by appellant's insurance and he would be entitled to maintain such insurance through her employer. Appellant was to receive three parcels of real property; the Performance Sports Center, L.L.C.; stock certificates in L & M Supply Company; and a 1998 Dodge Durango. Ricky Luthen was to receive Lone Pine Enterprises, L.L.C.; a 1968 Corvette; a 1979 Blazer; a 1991 Suburban; and a 28–foot cabin cruiser. In addition, appellant was to pay off a $60,000 note on behalf of Ricky Luthen due to the Grand Rapids State Bank. A default hearing was scheduled for November 16, 1998.

On November 10, 1998, Longrie and Itasca County filed a motion pursuant to

Minn. R. Civ. P. 24.01 to intervene as defendants in the Luthen dissolution. Earlier, in a paternity action commenced by intervenor Itasca County Health and Human Services and Longrie against Ricky Luthen, the district court adjudicated Ricky Luthen the father of T.L., but reserved the issue of child support. Longrie claimed that the Luthens were attempting to place Ricky Luthen's assets beyond her reach in an effort to reduce the assets from which Ricky Luthen would otherwise have to pay child support. In addition, Longrie filed a notice of motion and motion for temporary injunction, seeking to enjoin the Luthen dissolution. Longrie claimed that if the dissolution action was allowed to proceed, the Luthens could transfer assets of substantial value beyond her reach and this would result in irreparable injury, namely the loss of a potentially substantial amount of child support for which there is no remedy at law.

Following a hearing on November 16, 1998, the district court granted, on the record, Longrie's motion to intervene. Appellant filed her notice of appeal on December 11, 1998. On December 21, 1998, the district court filed its written findings of fact and order, granting Longrie and the county's motion to intervene and for a temporary injunction staying the Luthen dissolution. The district court found that the proposed division of marital assets was "unusual" because appellant (1) had been a housewife during the marriage; (2) was now being given the business "by which [Ricky Luthen] was employed"; (3) was being awarded Ricky Luthen's stock in L & M Supply company; and (4) was being given four parcels of real estate. The court noted that it had sent a letter to each party advising them to retain counsel because it considered the proposed disposition of property to be neither just nor equitable. In its attached memorandum of law, the district court noted that it routinely referred proposed dissolution agreements that fail to make provisions of child support to the county. By order dated March 22, 1999, this court ruled that the present appeal is to be taken from the December 21, 1998 order.

## ISSUES

1. Is the mother of a child born out-of-wedlock entitled, on behalf of the minor child and for future support purposes, to intervene as a matter of right in the dissolution of the marriage of the child's father?

2. Can the county, on behalf of a child born out-of-wedlock, intervene as a matter of right in a dissolution proceeding involving the child's father where it has not provided any support to the child?

3. Did the district court err when it refused to require intervenors to post security pursuant to Minn. R. Civ. P. 65.03?

## ANALYSIS

### I.

Longrie and the county moved to intervene as a matter of right pursuant to Minn. R. Civ. P. 24.01. The rule provides:

Upon timely application anyone shall be permitted to intervene in an action when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Minn. R. Civ. P. 24.01.

When reviewing orders addressing intervention of right, we independently assess the propriety of the order. *Gruman v. Hendrickson*, 416 N.W.2d 497, 500 (Minn.App.1987). Before being allowed to intervene as a matter of right under Rule 24.01, a party must show: (1) the motion to intervene was timely; (2) an interest relating to the property or transaction that is the subject of the action; (3) as a practical matter, disposition of the action may impair or impede the party's ability to

protect that interest; and (4) the party is not adequately represented by the existing parties. *Id.*

■■■ The rule can be liberally applied because courts encourage intervention. *Blue Cross/Blue Shield v. Flam by Strauss*, 509 N.W.2d 393, 396 (Minn.App. 1993), *review denied* (Minn. Feb. 24, 1994). Thus,

"if [the applicant's] interest is similar to, but not identical with, that of one of the parties, a discriminating judgment is required on the circumstances of the particular case, but [the applicant] ordinarily should be allowed to intervene unless it is clear that the party will provide adequate representation for the absentee."

*Costley v. Caromin House, Inc.*, 313 N.W.2d 21, 28 (Minn.1981) (quoting 7A Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure*, § 1909, at 524 (1972) (footnote omitted)) (citation omitted). The rule "is designed to protect nonparties from having their interests adversely affected by litigation conducted without their participation." *Gruman*, 416 N.W.2d at 500 (citation omitted).

A. *Existence of Interest*

■■■ The crux of this appeal is appellant's claim that Longrie and the county cannot properly intervene as of right because they do not have an interest in the Luthen dissolution proceeding and do not have an interest in the Luthen's marital property. Appellant further contends that Longrie's (and the county's) interest in child support, if they have one, is inchoate and based on speculation because no child support figure for Ricky Luthen has yet been determined.

First, we agree with appellant that nothing in the record shows any prejudice to Longrie's future right to child support. When the support obligation is adjudicated, Longrie, on behalf of her child, will be entitled to an equitable amount of child support from Ricky Luthen. *See* Minn. Stat. § 257.66, subd. 3 (1998) (requiring

paternity adjudication to include provision for support of child and stating support will be determined "in accordance with chapter 518"); Minn.Stat. § 518.57, subd. 1 (1998) (stating that in rulings under chapter 518, the court "shall" award support "which is just and proper" under Minn. Stat. § 518.551). Generally, support obligations are based on the obligor's *income*, not an obligor's hoped for *property award*. *See* Minn.Stat. § 518.551, subds. 5(b), (i) (1998) (setting guideline support based on obligor's net monthly income and stating guidelines presumptively applicable in all cases). It is possible, in some circumstances, that a property award can impact a support obligation. *See Quaid v. Quaid*, 403 N.W.2d 904, 906–07 (Minn.App.1987) (citing cases where supreme court affirmed support obligations requiring use of funds from liquidation of assets), *review denied* (Minn. June 30, 1987). However, here, appellant correctly notes that the current record shows neither that Ricky Luthen has a present child support obligation for Longrie's child nor that he will lack the ability to pay that obligation when it is set. Further, the division of marital assets is governed by Minn.Stat. § 518.58 (1998), which makes no mention of third-party creditors, including potential child support obligees, having a vested interest in the marital property of either the husband or the wife. Longrie has failed to show a vested interest in the Luthen dissolution distribution of marital assets.

■■■ Longrie contends that she is entitled to a fair share of the marital income-producing assets because these assets would be considered when determining Ricky Luthen's child support obligation. *See* Minn.Stat. § 518.551, subd. 5(c)(1) (1998) (requiring district court to consider obligor's property when setting support). We strongly disagree. There is no legal authority to support the contention that a child born out-of-wedlock is entitled to a portion of the father's marital property for the purposes of child support. Case law establishes that even children born during

a marriage do not have an absolute right to *marital property* of the children's parents. In *Johnson v. Johnson*, 284 Minn. 181, 183, 169 N.W.2d 595, 596 (1969), a bitterly contested divorce, the district court awarded the parties an undivided interest in marital real property. If one party died while the property was held in joint tenancy, title would vest in the surviving party and the parties' children. *Id.* The supreme court noted that the district court's award was based on a hope that after a period of time the parties would "cool off" and reach an amicable disposition of the property. *Id.* at 183, 169 N.W.2d at 597. In reversing the district court, the supreme court observed that

> there is nothing in the statutes which authorizes a court to award the children of the marriage any interest whatsoever in the property acquired during coverture.

*Id.* at 184, 169 N.W.2d at 597. Simply put, children have a right to child support, but they do not have a vested legal interest in the marital property which, in a dissolution, goes to the mother and the father. If the children of a marriage have no absolute vested right to property acquired by their parents during the marriage, children born out-of-wedlock are not entitled to property acquired during the father or mother's marriage to another.

Strong public policy dictates that the rights of a woman and a man to their own divorce action, where they can present their individual respective claims to marital property, maintenance, and child support, cannot be clouded by intervenors outside the marriage who speculate that they have a financial stake in the man getting more money than the woman or the woman getting more money than the man.

*B.   Protection of Interest*

Longrie argues she should have a direct interest in the Luthen's divorce proceeding because she has no other means by which to challenge the Luthen's division of marital assets and hence to protect her right to support from Ricky Luthen. Her argument ignores critical facts and legal principles. First, the record is clear that regarding the upcoming child support proceeding, Ricky Luthen has already acknowledged both his obligation and desire to pay reasonable child support. Second, there is no law to support Longrie's claim that she should have the right to challenge the Luthen's division of marital assets. We are persuaded by appellant's argument that allowing Longrie and the county to intervene as a matter of right would seriously contravene public policy. It would set a dangerous precedent and allow third-party creditors of a divorcing party to intervene as a matter of right. This, in turn, would complicate property divisions in dissolution proceedings and interfere with each spouse's right to an equitable division of the marital property.

Third, the crux of Longrie's argument is that the Luthens are perpetrating a fraud on the court by stipulating to a property division giving appellant a large (over 50%) share of marital property, thereby allowing Ricky Luthen to finesse what will be his support obligation to Longrie.[1] This argument improperly assumes the district court will neglect its duty to independently determine whether the proposed judgment is fair. *See Karon v. Karon*, 435 N.W.2d 501, 503 (Minn.1989) (holding district court (1) is third party to dissolution actions; (2) has duty to protect interests of both parties and all citizens of state to ensure "stipulation is fair and reasonable to all"; and (3) has authority to refuse to accept

---

1. Longrie argues that the Luthen's proposed stipulation appears to give too much property to appellant because she is only a "housewife." We are puzzled by this argument. Caselaw too extensive to cite here tells us it would do Ricky Luthen no good to make this argument in an effort to limit his wife's share of the marital property. And if a husband, a party to the marriage being dissolved, is not allowed to use this type of legal reasoning, it is difficult to see how a woman outside the marriage, whose concern is limited to future child support, can make the argument.

proposed dissolution stipulation "in part or *in toto.*"). We cannot assume that the district court will neglect its duty to independently evaluate the proposed judgment or will err or abuse its discretion in performing that evaluation. *See Loth v. Loth,* 227 Minn. 387, 392, 35 N.W.2d 542, 546 (1949) (stating appellate courts cannot assume district court error).

The record is clear that the proposed property division will not leave Ricky Luthen without the means to pay child support to T.L. once that obligation is determined.

The proposed stipulated property division awards Ricky Luthen a number of assets from which he could draw to meet a future child support obligation and, further, reduces his present debt obligations, which in turn itself is akin to a real asset. *See generally, Justis v. Justis,* 384 N.W.2d 885, 888–89 (Minn.App.1986) (stating apportionment of marital debt to be treated same as distribution of property), *review denied* (Minn. May 29, 1986). In addition to property, appellant agreed to pay a $60,000 note on behalf of Ricky Luthen and to pay him approximately $1,365 in monthly child support for the parties' three children. Additionally, the proposed property division relieves Ricky Luthen of any obligation to pay maintenance. The record also shows that Ricky Luthen has a job paying approximately $10 an hour.

Under the terms of the MTA, Ricky Luthen will have disposable income, he will have no child support obligation to appellant, he will have no spousal maintenance obligation to appellant, and he will no longer be responsible for a $60,000 note due to the Grand Rapids State Bank. Simply put, this dissolution action appears to leave him solvent and in a position to have child support for one child fairly calculated.

■ We can conclude only that allowing the mother of a child born out-of-wedlock to intervene as a matter of right in the proceedings dissolving the marriage of the child's father is problematic, troublesome,

and an unwarranted inference with the rights of a spouse, here Peggy Luthen, to her share of the marital assets. Marital property is to be equitably and reasonably divided *between the divorcing parties.* Minn.Stat. § 518.58, subd. 1.

There is no legal authority to support Longrie's assertion that she, on behalf of the child, is entitled to a portion of the Luthens' marital property for the purposes of child support. Longrie's child's right to future child support is there, is protected by statute and caselaw, and nothing in this record indicates that the child's right will not be vindicated. The district court erred when it allowed Longrie to intervene as a matter of right under rule 24.01.

## II.

*Itasca County*

■ Similarly, we hold that intervenor Itasca County has no legal interest in the dissolution proceeding and is not a proper party for intervention as of right. The county claims a similar, but separate interest than Longrie, the best interests of T.L. The county insists that it is entitled to intervene because it claims that Ricky Luthen is attempting to hide income. Itasca County's interest is totally "futuristic." The county speculates that Ricky Luthen will not be able to pay whatever child support he is ordered to pay (no evidence in the record of that) and that Longrie will then apply to the county for AFDC (no evidence in the record of that), and, therefore, this somehow gives the county a present vested right to intervene. We do not see that present vested right. As of the date of the hearing and from the record, Ricky Luthen has no present child support obligation, only the probability that one will materialize in the future. There is nothing in the record to show that he will not pay it when it is set. There is nothing in the record to show that Longrie has even applied to Itasca County for child support. The record is clear that Itasca

County, as of the date of the hearing, had not paid any.

The county has not provided any support to T.L. There are not any arrears because child support has not yet been awarded, let alone defaulted on. The county has no legal interest in the Luthen dissolution action and the district court erred when it allowed the county to intervene as a matter of right.

## III.

Appellant argues the district court erred when it enjoined further proceedings in this dissolution action without requiring security pursuant to Minn. R. Civ. P. 65.03. Because we conclude that the district court erred when it allowed Longrie and the county to intervene as a matter of right, this issue is moot.

## DECISION

The intervenors have no interest in the marital property to be divided in the Luthen dissolution. The intervenors have no legal interest in the Luthen dissolution. Their "future" claim to child support and possible arrearages is pure speculation on this record. Rather, the record shows no impairment of the putative obligor's ability to pay. Intervenors failed to establish that they are entitled to intervene as a matter of right under Minn. R. Civ. P. 24.01. The district court erred when it allowed Longrie and the county to intervene in the Luthen dissolution action.

**Reversed.**