GREAT WEST CASUALTY COMPANY, Appellant,

v.

NORTHLAND INSURANCE COMPANY, Respondent.

No. C1–95–58.

Court of Appeals of Minnesota.

Aug. 1, 1995.

Review Granted Sept. 20, 1995.

Thomas J. Norby, C. Todd Koebele, Peter B. Tiede, Murnane, Conlin, White & Brandt, St. Paul, for respondent.

Considered and decided by DAVIES, P.J., and SHORT and AMUNDSON, JJ.

## OPINION

DAVIES, Judge.

Appellant Great West Casualty Company instituted an action against respondent Northland Insurance Company pursuant to Minn. Stat. § 65B.47, subd. 5 (for contribution) or subd. 6 (for subrogation). The trial court held as a matter of law that Great West was not entitled to recover and entered a judgment in favor of Northland. We reverse and remand.

## FACTS

In June 1988, Maynard Neuleib (the insured) suffered a dislocated shoulder while unloading a semi-trailer. Three years later, the insured re-injured the shoulder, again while unloading a semi-trailer. At the time of the first accident, the insured was covered by a policy issued by Northland; at the time of the second, the insured was covered by Great West. In November 1991, the insured dislocated the shoulder a third time in an accident not involving a motor vehicle and not covered by policies issued by either party. All three accidents contributed in part to disability of the shoulder, and ultimately to an economic loss of $15,252.20.

The insured submitted claims for the costs of shoulder replacement surgery to both Great West and Northland. After Northland wrongfully denied him benefits, Great West paid the entire claim. Great West then brought this action to recover from Northland the no-fault benefits paid to the extent the injury was traceable to the June 1988 accident.

Following a bench trial, the trial court found that the cause of the insured's shoulder disability was properly allocated: 50 percent to the first accident (Northland's accident), 25 percent to the second accident (Great West's accident), and 25 percent to the third accident (uncovered). The court

Bruce D. Elliott, Dale J. Evensen, Cousineau, McGuire & Anderson, Minneapolis, for appellant.

held, however, that Great West was not entitled to a subrogation recovery. This appeal followed.

## ISSUE

Did the trial court err in holding as a matter of law that Great West was not entitled to subrogation?[1]

## ANALYSIS

■ Where material facts are not in dispute, a reviewing court need not defer to the trial court's application of the law. *Hubred v. Control Data Corp.*, 442 N.W.2d 308, 310 (Minn.1989). The construction of a statute is a question of law and thus fully reviewable by an appellate court. *Hibbing Educ. Ass'n v. Public Employment Relations Bd.*, 369 N.W.2d 527, 529 (Minn.1985).

Great West contends that if Northland was obligated under the no-fault law to pay a portion of the economic loss benefits, then Great West should have the right of subrogation. We agree.

The no-fault law includes the right to subrogation. Minn.Stat. § 65B.47, subd. 6 (1990), provides:

Where a reparation obligor pays basic economic loss benefits which another reparation obligor is obligated to pay *under the priority provided in this section,* the reparation obligor that pays is subrogated to all rights of the person to whom benefits are paid.

(Emphasis added.)

■ The trial court was led astray by the phrase, reading it as applying only to the emphasized "priority" applicable to a single accident. The trial court read the statute as if it read "under the priority provided in this section [*and related to this most recent accident* ]." The statute does not distinguish, however, between an injury caused by a single accident and an injury caused by multiple accidents. The phrase "under priority provided in this section" does not limit

subrogation to the circumstances of a priority established between insurers disputing their respective obligations in a single accident. It, thus, applies as well to multiple-accident disability.

■ When we apply the statute as written, Northland is obligated to pay benefits for the shoulder injury because "under the priority provided" in section 65B.47, subdivision 1, it is the obligated no-fault insurer for the first accident. For that first accident, Northland—as the insurer of the involved vehicle—was the company obligated to pay no-fault benefits. The fact that Northland did not provide coverage at the time of the second accident, when the shoulder was re-injured, does not relieve Northland of its obligation to pay no-fault benefits for the first accident "under the priority" of the statute.[2]

■ The purpose of the no-fault act includes "to relieve the severe economic distress" of victims by providing "prompt payment." Minn.Stat. § 65B.42, subd. 1 (1994); *McClain v. Begley,* 465 N.W.2d 680, 682 (Minn.1991). The right of subrogation furthers this purpose by encouraging one of the reparation obligors to step forward promptly to pay the full claim of a victim. Because subrogation works to that end regardless of whether an insured suffers injuries in a single accident or in separate accidents, subrogation should apply here.

We note that Great West was not a volunteer. Great West, obligated in part, simply paid the insured's claim in full to satisfy a prime goal of the statute. Now Great West is entitled to partial subrogation from Northland, the priority insurer for the initial damage to insured's shoulder.

## DECISION

The trial court erred when it ruled that Great West was not entitled to subrogation. Because Great West and Northland were both reparation obligors, but Great West paid the insured's entire claim, Great West is

---

1. On appeal, appellant has abandoned the contribution claim.

2. The dissent's reliance on *Milbrandt v. American Legion Post,* 372 N.W.2d 702, 705 (Minn.1985), is

misplaced. Subrogation in *Milbrandt* was based on a dram shop liability, not against another no-fault obligor, as here, and was claimed on the basis of Minn.Stat. § 65B.53, subd. 3.

entitled to subrogation for whatever share of the economic loss benefits Northland should have paid.[3]

**Reversed and remanded.**

SHORT, Judge, dissenting.

I respectfully dissent. Under the no-fault statute, an aggrieved carrier may recover certain payments by means of reimbursement from its insured under Minn.Stat. § 65B.54, subds. 3 & 4 (1992), or by means of contribution or subrogation from another carrier under Minn.Stat. § 65B.47, subds. 5 & 6 (1992). Great West elected to pursue Northland rather than the insured, and its subrogation rights depend on the carriers' respective priority levels. Minn.Stat. § 65B.47, subd. 6; *see* 1 Michael K. Steenson, *Minnesota No–Fault Automobile Insurance* 125 (2nd ed. 1989 rev. 1991) (the appropriate source of coverage for basic economic loss benefits is controlled by the priority scheme).

It is undisputed that Northland and Great West provided separate insurance coverage for different vehicles during different times when separate accidents occurred. Under these facts, Northland has no priority relationship to Great West and there is no legal basis for Great West's subrogation claim against Northland. *See Rodgers v. Progressive Specialty Ins. Co.,* 499 N.W.2d 61, 63 (Minn.App.1993) (reimbursement only for economic detriment from the accident causing the injury, but no reimbursement for economic detriment from injuries resulting from prior separate accidents), *pet. for rev. denied* (Minn. June 22, 1993); *Farm Bureau Mut. Ins. Co. v. National Family Ins. Co.,* 474 N.W.2d 424, 426 (Minn.App.1991) (under subdivision 6, the priority insurer reimburses the lower priority insurer if the lower priority insurer pays no-fault benefits), *pet. for rev. denied* (Minn. Oct. 31, 1991). Equitable concerns are inapplicable in the no-fault context of basic economic loss benefits. *See Milbrandt v. American Legion Post,* 372 N.W.2d 702, 705 (Minn.1985) (refusing to recognize

an equitable subrogation claim because it would upset the balance of the No–Fault Act).

There is no authority that permits one carrier to subrogate against another carrier providing coverage for a different accident. Under these circumstances, I would affirm the trial court's decision.

---

**3.** Great West seeks to recover two-thirds of the benefits it paid to the insured because the trial court found the cause of the shoulder disability allocated to the first accident was twice as great

as that allocated to the second accident. We leave to the trial court the determination of the correctness of the amount claimed.