**GREAT WEST CASUALTY COMPANY,
Respondent,**

v.

**NORTHLAND INSURANCE
COMPANY, Appellant.**

No. C1–95–58.

Supreme Court of Minnesota.

May 30, 1996.

C. Todd Koebele and Thomas S. Norby, Murnane, Conlin, White & Bradt, P.A., St. Paul, for Appellant.

Bruce D. Elliott and Dale J. Evensen, Cousineau, McGuire & Anderson, Chtd., Minneapolis, for Respondent.

## OPINION

STRINGER, Justice.

On June 15, 1988, while Maynard Neuleib was insured by the appellant Northland Insurance Company (Northland) under a policy that provided personal injury protection (PIP) no-fault benefits, he suffered a dislocated left shoulder when a large heavy pontoon fell onto his shoulder from a truck he was unloading. He received medical care and within approximately one month he resumed his work as a truck driver. Northland paid Neuleib approximately $2,200.00 for the medical expenses and wage losses he incurred related to that accident. Three years later, on June 21, 1991, Neuleib again dislocated his shoulder when he attempted to pull himself up to a standing position while engaging in his work activities. At that time, he was insured by the respondent Great West Casualty Company (Great West). On November 21, 1991, Neuleib dislocated the

same shoulder again as he reached out to move a branch from his path while hunting, but he had no insurance which covered this last injury.

Neuleib filed a claim for benefits with Great West on June 26, 1991, after the second accident, and Great West began paying Neuleib shortly thereafter. In January, 1992, Neuleib also re-applied to Northland for benefits under its 1988 policy, alleging that his current physical condition was due, at least in part, to the 1988 accident. Northland denied the claim on the basis of the one year lapse provision in its policy.[1] By May 1, 1992, Great West had paid Neuleib $6000 for lost wages related to the June, 1991 accident and $9252.20 for his shoulder surgery in December of 1991.

Subsequently, Great West brought a contribution and subrogation action against Northland under Minn.Stat. § 65B.47 (1994),[2] claiming that the June, 1991 injury, for which Great West made payment, was partially caused by the accident of June, 1988, while Neuleib was insured by Northland. The trial court denied Northland's motion for summary judgment because it believed there was a fact question relating to whether the lapse provision in Northland's policy barred coverage. The parties went to trial, and the court ruled in favor of Northland on the basis that since the principle of subrogation has no roots in the common law and is only a creature of statute, a claim for subrogation does not exist independent of a specific statutory declaration. The statute upon which Great West sought subrogation—Minn.Stat.

§ 65B.47—provides no such right, and therefore Great West could not recover. The court declined to rule on Northland's lapse provision defense.

In the court's findings, it determined that Neuleib suffered a permanent and continuing disability to his shoulder, and that 50% of his disability was attributable to the June, 1988 accident when he was insured by Northland, 25% to the June, 1991 accident when he was insured by Great West, and 25% to the November, 1991 accident when he was uninsured.[3]

The court of appeals reversed and held that Minn.Stat § 65B.47 entitled Great West to subrogation. *Great West Casualty Co. v. Northland Ins. Co.*, 534 N.W.2d 731, 733 (Minn.App.1995). The court held that the trial court misconstrued the statute when it limited coverage to injuries from one accident only, reasoning that the statute does not distinguish injuries caused by multiple accidents from those caused by single accidents. *Id.* We disagree.

■ In *Milbrandt v. American Legion Post of Mora*, 372 N.W.2d 702, 706 (Minn. 1985) we clearly set forth the principle that subrogation in the no-fault context is exclusively a creature of statute: "subrogation rights, because they are based upon the concept of fault, directly impact upon the operation of a no-fault system. * * * The extent of subrogation rights to be granted a reparation obligor that pays or is obligated to pay basic economic loss benefits is a matter for

---

1. The lapse exclusion provided:

   Exclusions

   This coverage does not apply:

   \* \* \* \* \* \*

   (i) to personal injury protection benefits otherwise payable in the event that a lapse of one year of (sic) more occurs in the period of disability and medical treatment of an eligible injured person as a result of any one accident.

2. Section 65B.47, subdivision 6 provides: "[w]here a reparation obligor pays basic economic loss benefits which another reparation obligor is obligated to pay under the priority provided in this section, the reparation obligor that pays is subrogated to all rights of the person to whom benefits are paid."

3. In its denial of summary judgment, the trial court adopted the definition of "disability" that appears at Minn.Stat. § 65B.51, subd. 3(c) (1994): "disability means the inability to engage in substantially all of the injured person's usual and customary daily activities." Section 65B.51 addresses something completely different from PIP benefits, however—it addresses deduction of the value of basic economic loss benefits from tort recovery and the limitation on the right to recover damages for noneconomic detriment. Although immaterial to our disposition of this case, we take the opportunity to note here that the appropriate definition for purposes of PIP benefits should be drawn from Minn.Stat. § 65B.44 (1994), which refers to "disability" in terms of an "inability to work." Minn.Stat. § 65B.44, subd. 3.

the legislature." *Id.* Great West's right to subrogation against Northland must be found, if at all, in the no-fault statute itself; we do not recognize a separate common law right of subrogation in the no-fault context.

Northland's liability for the losses of the 1988 accident is undisputed—section 65B.47, subd. 1 provides "if the accident causing the injury occurs while the vehicle is being used in the business of transporting persons or property, the security for payment of basic economic loss benefits is the security covering the vehicle or, if none, the security under which the injured person is an insured." The question then, is whether Northland's liability as the primary insurer under section 65B.47, subd. 1 extends to circumstances where a physical condition was caused partially by an accident that occurred while Northland insured Neuleib, and partially by two other accidents that occurred while it did not insure him. The statutory language provides no specific direction on this issue, but we are assisted in our analysis by the wording of the priority rule cited above referring to "*the accident* causing the injury." *Id.* (emphasis added). Similarly, in the definition section, "loss" is defined as "economic detriment resulting from *the accident* causing the injury." Minn.Stat. § 65B.43, subd. 7 (1994) (emphasis added). The clear implication is that only *one* accident can be deemed to be the cause of an injury for purposes of subrogation under section 65B.47. We see no indication that the statute was meant to provide a right of subrogation where, as here, one carrier claims it overpaid benefits because a physical condition was caused by more than one accident. Great West has no priority relationship to Northland, each having been a carrier at different times, and therefore the priority rule simply does not apply.

There is good reason for the priority rule to be limited to a single accident, as we so read it. The court of appeals' rule permitting subrogation in a multiple accident situation under the No–Fault Act has the potential to trigger precisely what the legislature appears to have attempted to avoid in adopting the term "the accident"—finger pointing among insurers claiming that another carrier was responsible for some portion of the insured's disability. Further, as we noted above, it introduces the fault-based concept of subrogation into allocation of loss independent of fault, a step we are unwilling to take without explicit statutory authority notably absent here. That the entire responsibility for Neuleib's disability caused by the accident occurring while Great West was on the policy should fall on Great West is neither unfair nor unjust. Great West accepted Neuleib as an insured with whatever physical condition he may have had at that time, and it is not for Great West to either refuse payment of benefits for that portion of his disability caused by a previous injury or is it to seek subrogation from Northland therefore.[4] We therefore reverse the court of appeals and reinstate the judgment of the trial court.

Reversed.

---

4. We recognize that by this ruling we cast a long shadow over the court of appeals decision in *Rodgers v. Progressive Specialty Ins.*, 499 N.W.2d 61 (Minn.App.1993). There the court of appeals held that under the No–Fault Act an insurer was obligated to pay only for the expenses related to the insured's current accident, even though 50% of the current medical treatment was attributable to an earlier accident when the same insurer provided coverage. *Id.* at 62–65. In *Rodgers,* the court of appeals relied on the use of the singular "accident" in the definition of "loss." *Id.* at 63. We disagree with the court's apportioning of PIP benefits, and we consider them payable by the insurer when the insured incurs a compensable loss.