Tawfiq KHAWAJA, Respondent,

v.

STATE FARM INSURANCE
COMPANIES, Appellant.

No. C9–00–1698.

Court of Appeals of Minnesota.

July 10, 2001.

Review Denied Sept. 25, 2001.*

* STRINGER, J., took no part in the consideration or decision of this case.

Todd P. Young, Roseville, MN, (for respondent).

James C. Selmer, Marc M. Berg, James C. Selmer & Associates, Minneapolis, MN, (for appellant).

Sharon L. Van Dyck, Schwebel, Goetz & Sieben, P.A., Minneapolis, MN, (for amicus Minnesota Trial Lawyers Association).

Considered and decided by CRIPPEN, Presiding Judge, KLAPHAKE, Judge, and STONEBURNER, Judge.

## OPINION

CRIPPEN, Judge.

Appellant State Farm Insurance Companies challenges a trial court order vacating an arbitrator's denial of respondent Tawfiq Khawaja's claim for benefits from appellant, arguing, inter alia, that *Scheibel v. Illinois Farmers Ins. Co.*, 615 N.W.2d 34 (Minn.2000), issued after the arbitrator's decision, requires an insured to exhaust the no-fault policy limit for the second of two motor vehicle accidents before appellant, the insurer for the first accident, is liable for additional medical expenses. Appellant also claims that because respondent settled with his second no-fault insurer for an amount less than the policy limit,

he is not entitled to benefits from appellant.

We affirm because *Scheibel* does not bar an insured's medical-expense recovery from the first insurer for amounts in excess of the second-accident coverage limit that are attributable to the first accident. But we modify the trial court's order to eliminate any reference to a credit due to appellant on remand to the arbitrator.

## FACTS

The parties dispute appellant's no-fault insurance obligation for the first of two motor vehicle accidents in which respondent was injured. After the first accident in 1994, respondent complained of neck pain and received medical care. Appellant was the no-fault insurer for this accident and paid out $3,900 in medical-expense benefits on respondent's behalf.

A different insurer, Titan Indemnity, covered respondent at the time of his second accident in 1996. After the 1996 accident, respondent complained of pain in the neck, shoulder, thigh, hip, and lower back and received substantial medical care. Titan paid out approximately $17,300 in benefits over the following year. In 1997, Titan requested that respondent get an independent medical examination. Respondent refused, and Titan suspended respondent's benefits.

Soon thereafter, respondent and Titan reached a settlement in which the insurer paid respondent $2,593 in exchange for his waiver of any future claims of no-fault benefits. Titan ended up paying out a total of $19,896.69, which included the settlement, since the second accident; $103.31 less than respondent's no-fault policy limit of $20,000.

Respondent, however, continued to incur medical expenses, bringing his total claims after the second accident to approximately $28,000. Respondent sought reimbursement from appellant for these expenses and filed a petition for mandatory no-fault arbitration, claiming that appellant, as insurer for the first accident, should be responsible for the remaining unpaid medical expenses.

At the arbitration hearing, appellant cited *Great West Cas. Co. v. Northland Ins. Co.*, 548 N.W.2d 279 (Minn.1996), to assert that only Titan Indemnity, as respondent's insurer for the second accident, could be liable for medical expenses following that accident. In support, appellant cited this court's unpublished opinion in *Scheibel v. Illinois Farmers Ins. Co.*, 615 N.W.2d 34 (Minn.App.1999), but noted that the case was before the Minnesota Supreme Court for review.

The arbitrator issued a decision denying respondent's claim. Although the arbitrator found that at least some of the injuries from the first accident were exacerbated by the second accident, he denied the claim because

> the parties agree that under present Minnesota case law the supreme court has prohibited arbitrators from apportioning no-fault between accidents and that the party can only receive no-fault protection from the last accident.

Respondent then filed a motion with the trial court to vacate the arbitration award on the ground that the arbitrator exceeded his authority, but did not schedule a hearing date. Appellant later filed a motion to confirm the arbitration award and scheduled a hearing.

At the hearing, appellant argued that it was entitled to an order confirming the award, regardless of *Scheibel* because respondent's motion to vacate was not heard within 90 days of the delivery of the award. The trial court took the matter under advisement until the supreme court issued its *Scheibel* decision.

After *Scheibel* was released, the trial court issued an order vacating the arbitration award and remanding the matter to the arbitrator. The court evidently agreed with appellant's argument that *Scheibel* contains an exhaustion requirement—a demand that respondent recover the limits of his Titan coverage before stating any claim against appellant—but concluded that it would be inequitable to impose the requirement on respondent because at the time of his settlement with Titan Indemnity, *Scheibel* was still pending. The court reasoned that had respondent known that his claim against appellant might be barred because he did not exhaust the full $20,000 of Titan Indemnity's coverage of his second accident, he would not have settled for $103.31 less than the policy limit. The court ordered that the arbitrator, on remand, credit appellant the $103.31 difference between the total paid by Titan Indemnity and the policy limit. The court also ruled that *Scheibel* applies retroactively and that respondent brought his motion to vacate in a timely manner.

Appellant filed a petition for discretionary review of the trial court order, which this court granted.

## ISSUE

Does *Scheibel* require that an insured exhaust the no-fault policy limit for the second of two accidents before seeking additional benefits under the policy for the first accident?

## ANALYSIS

### 1. *Scheibel*

■ Respondent and amicus Minnesota Trial Lawyers Association argue that the trial court erred in concluding that *Scheibel v. Illinois Farmers Ins. Co.*, 615 N.W.2d 34 (Minn.2000), contains an exhaustion requirement such that the insurer

for the first accident is not obligated to pay for unreimbursed medical expenses attributable to that accident in the event that the insured settles with an insurer for the second accident for an amount less than the policy limit for that accident. The trial court's interpretation of a supreme court decision presents a question of law subject to de novo review. *State v. Camacho*, 561 N.W.2d 160, 170 (Minn. 1997).

In *Scheibel*, the supreme court considered the application of the Minnesota No-fault Automobile Insurance Act to a situation in which an insured was involved in two automobile accidents that cumulatively caused injuries. 615 N.W.2d at 39. After the second accident, insurer paid the $20,000 policy limit, leaving approximately $6,500 in unpaid medical expenses. *Id.* at 36 n. 1. The supreme court concluded that (1) the insurer for the second accident was obligated to pay the maximum policy limit for the insured's injuries regardless of the extent to which each accident contributed to the injuries; and (2) the insurer for the first accident was liable up to its policy limit for additional unreimbursed medical expenses for which the insured still had a viable claim for injuries attributable to that accident. *Id.* at 39.

The trial court interpreted *Scheibel* to require that an insured exhaust the policy limit for the second accident before the insurer for the first accident is liable for any unreimbursed medical expenses. The trial court relied on specific language in *Scheibel* that the insured is entitled to payment for medical expenses attributable to the first accident "after the $20,000 policy limit for the second accident has been paid." *Id.* The trial court noted that Titan Indemnity, as insurer for respondent's second accident, did not pay the policy limit because the parties settled for less than the $20,000 limit. The trial court

concluded that because respondent did not exhaust the policy limit he ordinarily would be barred from seeking additional benefits from appellant.

But amicus insists that the supreme court's conclusions in *Scheibel* must be read in light of the facts of the case and the issue before the court. The association points out that because the policy limit for the second accident in *Scheibel* had already been paid before the case reached the supreme court, the question of how to handle a less-than-limits settlement of claims arising from the second accident was not considered by the court. As a result, amicus contends, the focus of the supreme court's conclusion that the insured is entitled to payment for medical expenses that remain unreimbursed "after the $20,000 policy limit for the second accident has been paid," *Scheibel,* 615 N.W.2d at 39, is not a decision that the limit has been paid in full but that the insured is entitled to collect additional benefits from uncompensated economic loss. Therefore, amicus argues, *Scheibel* should not be read so literally as to contain an exhaustion requirement. This represents a proper reading of *Scheibel.*

The *Scheibel* court considered the stated purpose of the no-fault act because it was presented with an issue the act had not addressed: What happens when multiple accidents cumulatively cause injuries to an insured? *Id.* at 38. The court observed its earlier determination that the "primary purpose of the no-fault act is to promote full but not over-compensation of injured persons" and stressed it was critical that the court "keep this over-arching policy of full compensation in mind." *Id.* (citations omitted).

The court went on to examine the "key principles" of the no-fault act enunciated in *Great West Cas. Co. v. Northland Ins. Co.,* 548 N.W.2d 279 (Minn.1996). *Id.* The court noted that it emphasized in *Great West* that the act is "intended to promote the efficient administration of justice and provide an insured prompt payment." *Id.* (citation omitted). Observing that "[i]t would be an absurd result to cut off recovery for an injury from the first accident merely because an intervening accident aggravates the same injury," the court first concluded, "consistent with [its] language in *Great West,*" that the insurer for the second accident is "obligated to pay the maximum policy limit" for the insured's injuries regardless of the extent to which each accident contributed to the injuries. *Id.* at 38–39.

The supreme court also concluded that the insured is entitled to payment from the insurer for the first accident "after the $20,000 policy limit for the second accident has been paid." *Id.* at 39. The language in this conclusion reflects the *Great West* obligation of the insurer for the second accident to pay the policy limit. It is evident that the emphasis is on the obligation of the second insurer to pay the policy limit, not that the policy limit must in fact be paid; *Scheibel* holds that the obligation of the first insurer is not affected by the actual recovery from the second insurer. Therefore, we conclude that the trial court erred when it read *Scheibel* to contain an exhaustion requirement.

■ But this does not end our inquiry. In *Scheibel,* the insurer for the second accident fully discharged its obligation to pay the maximum policy limit of $20,000 because it reimbursed the insured in that amount. Here, in contrast, respondent settled with Titan, the insurer for the second accident, for an amount less than the policy limit. Thus, we turn to the question of the effect such a settlement has on the *Scheibel* obligation of appellant, the insurer for the first accident, to pay for respon-

dent's unreimbursed medical expenses attributable to that accident.

We find clear guidance for this issue in *Scheibel.* The supreme court held that after the second insurer has discharged its obligation to pay the maximum policy limit, an insured is entitled to "additional reimbursement" under the insured's policy with the first insurer for damages attributable to the first accident. *Id.* Thus, to the extent that the insured has medical expenses attributable to the first accident that remain unreimbursed after the second insurer has discharged its obligation, the first insurer's liability under its policy with the insured is confined to those expenses that are above the insured's policy limit for the second accident.

We construe this language to exclude the possibility that an insured may recover from the first insurer the difference, if any, between the policy limit for the second accident and the total amount, including settlement proceeds, paid out by the second insurer. The amount of the insured's recovery from the insurer for the first of two accidents must be reduced by the amount of medical expenses that could have been, but were not, recovered by the insurer for the second accident.

Because there is no exhaustion requirement in *Scheibel,* we need not address the trial court's equitable-exception ruling.

### 2. Other Claims

#### a. Retroactive effect of *Scheibel*

■ Appellant claims that the trial court erred when it determined that *Scheibel* applies retroactively. Whether a judicial decision will apply retroactively is a question of law, which this court reviews de novo. *Summers v. R & D Agency, Inc.,* 593 N.W.2d 241, 243–44 (Minn.App.1999).

■ Under the general rule, absent special circumstances or a court's specific pronouncement that a decision is to be applied prospectively only, a decision will be given retroactive effect. *Hoff v. Kempton,* 317 N.W.2d 361, 363 (Minn.1982). The *Scheibel* court did not indicate that its decision should be applied prospectively only. But appellant contends that there are special circumstances that preclude retroactive application of *Scheibel.*

■ To determine whether special circumstances require that a decision be applied prospectively only, this court applies a three-part test, examining (1) whether the decision establishes a new principle of law, either by overruling clear past precedent or by deciding an issue of first impression, whose resolution was not clearly foreshadowed; (2) whether retroactive operation will further or retard the rule's operation, keeping in mind the purpose and effect of the rule; and (3) how the application matches with concerns about equity, justice, and hardship. *Casper v. Casper,* 593 N.W.2d 709, 712 (Minn. App.1999) (citing *Hoff,* 317 N.W.2d at 363 (citations omitted)). When the second and third factors weigh in favor of retroactivity and the first does not, a decision will be given retroactive application. *Summers,* 593 N.W.2d at 245–46.

■ For the second factor, appellant argues that retroactive application would retard operation of the *Scheibel* first-insurer-exposure rule by requiring an insurer to keep files open indefinitely in the anticipation that a claimant might return to seek benefits from one accident after being involved in a second accident with a different insurer. But we can not imagine how concern for retaining files could override the purpose of the no-fault act to provide "reimbursement for *all* loss suffered through injury arising out of the maintenance or use of a motor vehicle." *Scheibel,* 615 N.W.2d at 38 (quoting Minn.Stat. § 65B.44, subd. 1 (1998)). Applying *Schei-*

*bel* retroactively to injured persons who otherwise would not be fully reimbursed for medical expenses would further, not retard, the *Scheibel* rule.

The third factor involves weighing the equities involved in a retroactive application of *Scheibel*. The obvious equity in respondent's favor is that he may be reimbursed for medical expenses that he otherwise would not receive. Appellant argues that retroactive application would be inequitable because (1) generally, insurers would be confronted with new claims from claimants whose files have been closed, and (2) specifically, appellant would need to evaluate the reasonableness and necessity of medical expenses incurred after respondent received medical care for injuries not attributable to the first accident. But appellant offers no facts that suggest that new claims under the *Scheibel* rule would be a significant administrative or financial hardship. Nor does appellant explain how evaluating respondent's medical expenses would be more difficult than a typical multiple-injury evaluation.

Because factors two and three clearly weigh in favor of retroactive application, we conclude that the trial court did not err when it determined that *Scheibel* applies retroactively.

### b. Timeliness of motion to vacate

■ Appellant argues that the trial court erred in determining that respondent brought the motion to vacate the arbitration award in a timely fashion within the meaning of the Minnesota Uniform Arbitration Act (UAA), Minn.Stat. § 572.19 (2000). The construction of a statute is a question of law subject to de novo review. *Lolling v. Midwest Patrol*, 545 N.W.2d 372, 375 (Minn.1996).

The procedures in the uniform act govern motions to vacate no-fault arbitration awards. Minn.R. No Fault Arb. 38. A motion to vacate an award must be brought within 90 days of the delivery of the award. Minn.Stat. § 572.19, subd. 2. Respondent does not base his motion on corruption, fraud, or other undue means, the only exceptions to the 90–day requirement. *Id.*

■ Appellant acknowledges that respondent's motion was filed within 90 days of the delivery of the award but contends that it was untimely because it was not heard within the 90 day period. Appellant points to language in the uniform act providing that

> [u]pon application of a party, the court shall confirm an award, unless within the time limits hereinafter imposed grounds are urged for vacating or modifying or correcting the award.

Minn.Stat. § 572.18 (2000). Appellant argues that the phrase "grounds are urged" is best understood to require that a motion must be heard to be timely.

■ But the statute also provides that an application to the court under this chapter shall be by motion and shall be heard in the manner and upon the notice provided by law or rule of court for the making and hearing of motions.

Minn.Stat. § 572.23 (2000). And motions are generally considered timely when they are filed within a prescribed period of time. Minn. R. Gen. Pract. 115.01. The prescribed period of time for a motion to vacate an arbitration award is 90 days from the delivery of the award. Minn. Stat. § 572.19, subd. 2. Appellant inappropriately disregards the instruction of Minn.Stat. § 572.23 that the necessary motion be heard as provided by rules of the court. "A goal of any statutory interpretation is to avoid rendering portions of a statute superfluous." *In re Estate of Jobe*, 590 N.W.2d 162, 166 (Minn.App.1999), *review denied* (Minn. May 26, 1999).

Finally, appellant argues that if a party is allowed to serve and file a motion to vacate an arbitration award but is not required to schedule a hearing, there would in effect be no time limit on bringing a motion to vacate. And with no time limit, there would be opportunity for manipulation and abuse of the judicial process.

A party filing a motion to vacate is required to obtain a hearing date. Minn. R. Gen. Pract. 115.02. Respondent did not do so when he filed his motion because, evidently, he saw little point in scheduling a hearing before *Scheibel* was issued. The trial court apparently agreed; at the hearing scheduled after appellant brought its motion to confirm the award, the court noted that *Scheibel* had not yet been issued and deferred the matter until after the decision was released. Appellant has failed to demonstrate that any technical noncompliance with Minn. R. Gen. Pract. 115.02 was prejudicial. *See Midway Ctr. Assocs. v. Midway Ctr., Inc.*, 306 Minn. 352, 356, 237 N.W.2d 76, 78 (1975) (stating appellant must show both error and prejudice to obtain reversal).

### c. Credit

Appellant contends that it should be credited $2,593, the full amount of the last payment to respondent by Titan Indemnity, to the extent that the money was not used to pay outstanding medical bills. But we do not have the facts necessary to consider this issue because the arbitrator made no findings on the allocation of expenses between the first and second accidents, the amount of respondent's incurred medical expenses, and the amount of actual available coverage paid out from Titan Indemnity.

We modify the trial court's order to eliminate any reference to a credit to be applied by the arbitrator. But we reiterate that respondent cannot recover the gap between the total amount paid out by Titan Indemnity and his $20,000 policy limit. The amount of any recovery from appellant must be reduced by the amount of medical expenses that could have been, but were not, recovered from Titan Indemnity.

### DECISION

The trial court erred by determining that *Scheibel* contains an exhaustion requirement but properly granted respondent's motion to vacate the arbitration award.

**Affirmed as modified and remanded.**